IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HELMUT EINDORF,                     §
                                    §
            Plaintiff,              §
                                    §
v.                                  §     CIVIL ACTION NO. H-09-2571
                                    §
EXTREMETIX, INC.,                   §
                                    §
            Defendant.              §

## MEMORANDUM OPINION AND ORDER

Helmut Eindorf brings this action against Extremetix, Inc.
("Extremetix") alleging that Extremetix violated the Age
Discrimination in Employment Act and the Family and Medical Leave
Act when his employment was involuntarily terminated in 2007.
Pending before the court is Defendant's Motion for Summary Judgment
(Docket Entry No. 17) and Defendant's Motion to Strike Plaintiff's
Unauthorized Sur-Reply (Docket Entry No. 24).  For the reasons
explained below, the court will grant the defendant's summary-
judgment motion, enter a final judgment dismissing this action, and
deny the motion to strike as moot.

## I.  Factual and Procedural Background

This action concerns an employment dispute arising from
Eindorf's involuntary termination from Extremetix in August of
2007.  Eindorf is an individual residing in Montgomery County,

Texas,[1] and Extremetix is a Texas corporation doing business in Texas.[2] Extremetix develops and markets internet-based ticketing solutions for entertainment events.[3]

## A.  Underlying Facts

### 1.  Eindorf's Employment at Extremetix

Eindorf first learned about an employment opportunity at Extremetix from his brother-in-law, the Chairman of the Board of Extremetix, who helped set up an interview between Eindorf and Extremetix's President, Charly Garrett.[4] Eindorf was hired and began working for Extremetix on April 25, 2005.[5] At the time, Eindorf was 66 years old.[6] Garrett states that Eindorf was hired "as an IT Specialist to configure, ship, receive[,] and track the

---

[1]Plaintiff's First Amended Original Complaint ("Complaint"), Docket Entry No. 3, ¶ 1.

[2]Defendant's Motion for Summary Judgment ("Defendant's Motion"), Docket Entry No. 17, p. 1.

[3]Id.

[4]Deposition of Helmut Eindorf, Ex. 3 to Plaintiff Helmut Eindorf's Response in Opposition [to] Defendant Extremetix, Inc.'s Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 20, p. 14:10-15.

[5]Affidavit of Charly Garrett, Exhibit 1 to Defendant's Motion, Docket Entry No. 17, ¶ 3.

[6]Deposition of Helmut Eindorf, Ex. 3 to Plaintiff's Response, Docket Entry No. 20, p. 22:6-7.

company's inventory of equipment."[7]  Although Eindorf acknowledges he was eventually responsible for these tasks, he states that before he arrived for his first day of work he was unaware what his job responsibilities would entail.[8]

Extremetix's business involves assembling, configuring, and shipping electronic equipment to clients, who use the equipment to electronically scan tickets for their events.[9]  Extremetix's products facilitate online event-ticket purchases.[10]    When Extremetix ships equipment bundles to its clients, the bundles include laptop computers, hand-held devices ("Dolphins") for ticket scanning, and power cords.[11]  Eindorf was generally responsible for configuring and shipping the equipment and keeping track of the equipment inventory.[12]  Eindorf states that he received no formal training on how to program and configure the electronic equipment, tasks with which he was previously unfamiliar, but that as a result of some verbal instruction from other employees and self-training,

---

[7]Affidavit of Charly Garrett, Exhibit 1 to Defendant's Motion, Docket Entry No. 17, ¶ 3.

[8]Deposition of Helmut Eindorf, Ex. 3 to Plaintiff's Response, Docket Entry No. 20, pp. 21:2-14, 25:13-21.

[9]Affidavit of Charly Garrett, Exhibit 1 to Defendant's Motion, Docket Entry No. 17, ¶ 2.

[10]See id.

[11]Id.

[12]Deposition of Helmut Eindorf, Ex. 3 to Plaintiff's Response, Docket Entry No. 20, p. 25:13-21.

he became competent in his role "within months."[13]  Tony DiCamillo, Extremetix's Vice President of Operations, states that he "trained Mr. Eindorf regarding his job responsibilities."[14]

    2.   <u>Eindorf's Work Performance</u>

Eindorf's first supervisor at Extremetix was DiCamillo, who began formally noting "significant errors" in Eindorf's work performance in mid-May of 2005, approximately three weeks after Eindorf was hired.[15]  "Three of the errors involved Mr. Eindorf shipping incorrect equipment to clients, and one error involved Mr. Eindorf shipping equipment late."[16]  DiCamillo verbally counseled Eindorf about these errors on May 23, 2005.[17]  On June 21, 2005, Eindorf received a written warning from DiCamillo that cited the four mid-May mistakes as well as three additional mistakes occurring in mid-June.[18]  All three errors were the result of Eindorf's incorrect configuration of equipment.[19]

---

[13]<u>Id.</u> at 29:2-31:15.

[14]Affidavit of Tony DiCamillo, Exhibit 2 to Defendant's Motion, Docket Entry No. 17, ¶ 3.

[15]<u>Id.</u> ¶ 4.

[16]<u>Id.</u>

[17]<u>Id.</u>

[18]Written Warning, Exhibit 6 to Defendant's Motion, Docket Entry No. 17, p. 1.

[19]<u>Id.</u>

4

Upon receiving the June written warning, Eindorf wrote the word "no" next to three of the seven alleged errors because he disagreed with DiCamillo's assessment that Eindorf was responsible for the errors.[20] Eindorf believed that DiCamillo accepted other employees' comments as facts without giving Eindorf the opportunity to accept or deny the accusations.[21]

In October of 2005 Garrett and DiCamillo placed Eindorf on probation for forty-five days because of five more "significant errors" Eindorf made throughout September, including "configuring equipment improperly, shipping equipment late, sending an incomplete shipment[,] and sending a shipment to the wrong client."[22] Just as with the first written warning, Eindorf contested some of the mistakes but not others.[23] The probation notice stated that "[t]he severity and frequency of [Eindorf's] mistakes need to decrease substantially" and that "[i]f mistakes continue the result will be corrective action up to and including

---

[20]Id.; Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, pp. 25:2-28:24.

[21]Notes on the Conference with Tony on 6/21/05, Exhibit 10 to Plaintiff's Response, Docket Entry No. 20, p. 1.

[22]Written Probation Notice, Exhibit 7 to Defendant's Motion, Docket Entry No. 17, p. 1; Affidavit of Tony DiCamillo, Exhibit 2 to Defendant's Motion, Docket Entry No. 17, ¶ 6.

[23]Eindorf's Notes on Written Probation Notice, Exhibit 12 to Plaintiff's Response, Docket Entry No. 20, p. 2; Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, pp. 38:2-41:11.

5

termination."[24]  Eindorf states that his probationary period lapsed without incident and that neither DiCamillo nor Garrett met with Eindorf for a "follow-up discussion to assess [his] progress" as stated in the notice of probation.[25]  Around the same time as Eindorf's probation, Garrett decided to change Eindorf's supervisor from DiCamillo to Hergert because Eindorf "was having work performance problems" and Hergert's "office was close to Mr. Eindorf."[26]  Garrett "hoped that Mr. Hergert could provide closer supervision and immediate guidance."[27]

Extremetix asserts that in 2006 Eindorf's work-related mistakes continued.  In mid-August, Eindorf failed to include power-supply equipment for one shipment and for another he failed to meet the client's requested deadline.[28]  On August 24, Eindorf received a verbal warning, signed by Hergert, for neglecting to configure one of the Dolphins being shipped to an event in

---

[24]Written Probation Notice, Exhibit 7 to Defendant's Motion, Docket Entry No. 17, p. 1.

[25]Plaintiff's Response, Docket Entry No. 20, p. 3.  See also Written Probation Notice, Exhibit 7 to Defendant's Motion, Docket Entry No. 17, p. 1.

[26]Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 3.

[27]Affidavit of Charly Garrett, Exhibit 1 to Defendant's Motion, Docket Entry No. 17, ¶ 5.

[28]See E-mails Between DiCamillo and Hergert, Exhibit 9 to Defendant's Motion, Docket Entry No. 17, p. 1.

Indianapolis.[29]    Eindorf  also  received  a  written  warning  on
September 20, 2006, for again neglecting to send the necessary
power-supply equipment with a particular shipment.[30] Eindorf signed
the warning and wrote: "Will attempt for it not to happen again."[31]
Also,  on  October  23,  2006,  Eindorf  received  a  verbal  warning
because he "failed to keep [the] inventory list consistent with
[the] actual inventory," and failed to keep the list "neat" and
"free of typos."[32]

In  March  of  2007  Hergert  issued  another  verbal  warning  to
Eindorf for "[e]rrors in shipping, missing items, wrong addresses
and typos, [and] forgotten shipment[s]."[33]  Hergert states that he
"decided to relieve Mr. Eindorf from his equipment configuration
and inventory catalog responsibilities, which were transferred to
Michelle  Storm,  Network  Administrator,"  and  that  he  instructed
Eindorf  "to  focus  on  shipping  and  receiving  responsibilities

---

[29]Record of Verbal Warning, Exhibit 13 to Plaintiff's Response,
Docket Entry No. 20, p. 1.

[30]Written  Warning  of  9/20/06,  Exhibit  14  to  Plaintiff's
Response, Docket Entry No. 20, p. 1.  See also E-mails Between
Hergert, DiCamillo, & Eindorf, Exhibit 11 to Defendant's Motion,
Docket Entry No. 17, p. 1.

[31]Id.

[32]Verbal  Warning  of  10/23/06,  Exhibit  16  to  Plaintiff's
Response, Docket Entry No. 20, p. 1.

[33]Verbal Warning of 3/26/07, Exhibit 18 to Defendant's Motion,
Docket Entry No. 17, p. 1; Affidavit of Michael Hergert, Exhibit 3
to Defendant's Motion, Docket Entry No. 17, ¶ 9.

exclusively."[34]  Eindorf does not recall receiving this particular verbal warning, but recalls conversations with Hergert in which Hergert addressed missing items and wrong addresses with respect to various shipments.[35]   Eindorf testified that Hergert never officially stripped him of any of his responsibilities, but that his role was in effect reduced by the hiring of Storm, who both shared his responsibilities and received additional responsibilities.[36]

Extremetix references several other examples of Eindorf's poor work performance in 2007.  First, Hergert states that Eindorf sent a client a package that was "untimely" and "missing power supply equipment" in April.[37]   Eindorf agrees it was his general responsibility to include such equipment but does not recall that particular shipment.[38]  In addition, Hergert states that Eindorf "erroneously placed a return address label on a shipment intended

---

[34]Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 9.

[35]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, pp. 68:5-69:22.

[36]Id. at 69:23-72:3.

[37]Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 10.  See also E-mails Between DiCamillo and Client, Exhibit 19 to Defendant's Motion, Docket Entry No. 17, pp. 1-2.

[38]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, p. 73:14-22.

to go to the Norwalk Jazz Festival."[39]   In his deposition Eindorf
did not recall the specific festival but stated that he recalled an
incident where he addressed a shipment with a return label instead
of the shipping label.[40]   Lastly, Extremetix states that in July of
2007, Eindorf, when addressing two different shipments to two
separate clients, swapped the shipping labels so that each client
received the shipment intended for the other client.[41]   Eindorf
recalls the incident but states that there were three other people
involved in the shipment who also were responsible for the
mistake.[42]

Although Eindorf acknowledges his employment with Extremetix
was not devoid of errors, he disputes defendant's assertions of
continuously poor work performance.   Eindorf first points to the
"Performance Stock Option" he was given in January of 2007 "to
purchase all or any part of 5,000 shares of [Extremetix's] Common
Stock."[43]   Keith Rudy, Extremetix's CFO, testified that all full-

---

[39]Affidavit of Michael Hergert, Exhibit 3 to Defendant's
Motion, Docket Entry No. 17, ¶ 10.

[40]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's
Response, Docket Entry No. 20, pp. 75:16–76:12.

[41]Affidavit of Michael Hergert, Exhibit 3 to Defendant's
Motion, Docket Entry No. 17, ¶ 11.   See also E-mail Between
DiCamillo and Hergert, Exhibit 21 to Defendant's Motion, Docket
Entry No. 17, p. 1.

[42]See Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's
Response, Docket Entry No. 20, pp. 76:18–80:3.

[43]2007 Performance Stock Option Award Agreement, Exhibit 17 to
Plaintiff's Response, Docket Entry No. 20, p. 1.

time employees received the options and that work performance was not considered.[44]  Second, Eindorf notes that Extremetix increased his annual salary from $36,000 to $42,000 a year after he started working for Extremetix.[45]  Garrett and Hergert state that Eindorf requested a raise because of "the high cost of gasoline and increased health insurance premiums" and that the raise was approved because of these reasons, "unrelated to Mr. Eindorf's work performance."[46]  Third, Eindorf contends that his work performance benefitted the company because average monthly shipments increased each year the inventory and shipping duties were under his command.[47]

3.    Eindorf's Termination

Within a few days of the label-swapping incident in late July of 2007, Garrett, Rudy, Hergert, and DiCamillo met and "noted that performance issues persisted throughout Mr. Eindorf's tenure." They concluded that Eindorf's mistakes "were causing the company's profitability and reputation to suffer," and "agreed that Extremetix had to sever its employment relationship with Mr.

---

[44]Deposition of Keith Rudy, Exhibit 15 to Defendant's Motion, Docket Entry No. 17, pp. 112:8-113:3.

[45]Plaintiff's Response, Docket Entry No. 20, p. 2.

[46]Affidavit of Charly Garrett, Exhibit 1 to Defendant's Motion, Docket Entry No. 17, ¶ 6; Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 4.

[47]Plaintiff's Response, Docket Entry No. 20, pp. 2-4.

Eindorf because of Mr. Eindorf's ongoing poor work performance."[48] They decided to offer Eindorf "an opportunity to retire" instead of terminating him for cause, which consisted of "severance pay in exchange for a general release of liability."[49]

Although Eindorf is unsure of the exact date, he testified that sometime "around" late July of 2007 he informed Hergert he was scheduled to have foot surgery on August 13, 2007, "would be out for three or four weeks," and wanted to try to create a schedule that would allow him to work from home while he was recovering from the surgery.[50]   Hergert states that Eindorf informed him of the upcoming surgery after the management team had already decided to end Eindorf's employment.[51]

On the morning of Eindorf's termination, August 6, 2007, Eindorf testified that he told Hergert about another procedure he was going to have done in late August.[52]   That afternoon, according

---

[48]Affidavit of Charly Garrett, Exhibit 1 to Defendant's Motion, Docket Entry No. 17, ¶ 9; Affidavit of Tony DiCamillo, Exhibit 2 to Defendant's Motion, Docket Entry No. 17, ¶ 13; Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 13; Affidavit of Keith Rudy, Exhibit 22 to Defendant's Motion, Docket Entry No. 17, ¶ 3.

[49]Affidavit of Charly Garrett, Exhibit 1 to Defendant's Motion, Docket Entry No. 17, ¶ 9.

[50]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, p. 80:11-24.

[51]Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 14.

[52]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, pp. 81:15-82:21.

to Eindorf, Hergert and Rudy called Eindorf into Hergert's office, presented him with a letter stating that "it [was] time [Eindorf] retired from Extremetix, Inc.," and told Eindorf his employment was finished.[53]  The letter, accompanied by a "Retirement Agreement and General Release," offered Eindorf a lump-sum payment equal to two-months' salary and an extension on Eindorf's right to exercise his stock options.[54]  Eindorf does not remember either Hergert or Rudy mentioning anything about his age.[55]  Hergert states that at the time Eindorf approached him to inform him about the second medical procedure, Eindorf's termination letter had already been drafted.[56] Eindorf declined Extremetix's retirement offer[57] and on August 23, 2007, Eindorf's separation was consequently classified as "a discharge for poor work performance."[58]

_____

[53]Id. at 83:23-84:8; Letter to Eindorf of 8/6/07, Exhibit 2 to Plaintiff's Response, Docket Entry No. 20, p. 1.

[54]Letter to Eindorf of 8/6/07, Exhibit 2 to Plaintiff's Response, Docket Entry No. 20, pp. 1-5.

[55]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, p. 86:8-19.

[56]Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶¶ 14-15.

[57]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, p. 88:15-24.

[58]Affidavit of Charly Garrett, Exhibit 1 to Defendant's Motion, Docket Entry No. 17, ¶ 10.

### 4.   The Number of Extremetix Employees in Houston

Keith Rudy, Extremetix's Chief Financial Officer, states that during the period of Eindorf's employment, Extremetix "never employed more than 40 persons at its worksite in Houston and it never employed more than 40 persons within 75 miles of the Houston facility."[59]   In his deposition Eindorf stated that he's "the wrong person to ask" about the number of Extremetix employees but that he was "sure [the number] was over 40, close to 50" and later that Extremetix "definitely" had more than 50 employees.[60]   Eindorf further stated that "Mr. Rudy" would know that information since he oversees human-resources matters.[61]

## B.   Procedural History

After Eindorf received a notice of dismissal and of his right to sue from the Equal Employment Opportunity Commission ("EEOC"), he timely filed this action on August 12, 2009, alleging violations of the ADEA and the FMLA.[62]   The court denied Extremetix's motion to dismiss the action on December 29, 2009.[63]   On September 22,

---

[59]Affidavit of Keith Rudy, Exhibit 22 to Defendant's Motion, Docket Entry No. 17, ¶ 8.

[60]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, pp. 101:1-102:9.

[61]See id.

[62]Plaintiff's Original Complaint, Docket Entry No. 1.

[63]Order, Docket Entry No. 10.

2010, Extremetix filed this summary-judgment motion, arguing it is entitled to judgment as a matter of law as to both of Eindorf's claims. First, with respect to the FMLA claim, Extremetix argues that (1) Eindorf is not an eligible employee as defined by the statute, and (2) even if Eindorf is an eligible employee, he was not entitled to take leave given the circumstances of his termination.[64] Second, with respect to the ADEA claim, Extremetix argues that (1) Eindorf has failed to establish a prima facie case under the ADEA, (2) even if Eindorf has established such a claim, Extremetix has demonstrated a legitimate, nondiscriminatory reason for terminating Eindorf, and (3) Eindorf has presented no evidence showing that Extremetix's legitimate and nondiscriminatory reason is merely pretext for intentional discrimination.[65]  With respect to his ADEA claim, Eindorf argues that the summary-judgment evidence shows that Eindorf has established a prima facie case of age discrimination and that Extremetix's stated reasons for terminating Eindorf are "but a pretext for intentional discrimination."[66]  Eindorf does not respond to Extremetix's FMLA

---

[64]Defendant's Motion, Docket Entry No. 17, pp. 9–10.

[65]Id.

[66]Plaintiff's Response, Docket Entry No. 20, p. 2.

arguments.[67]  The court has also read and considered Extremetix's reply[68] and Eindorf's surreply.[69]

## II. <u>Summary-Judgment Standard</u>

Summary judgment is authorized if the movant establishes that there is no genuine issue as to any material fact and the law entitles it to judgment.  FED. R. CIV. P. 56(c)(2).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  <u>Little v. Liquid Air Corp.</u>,

---

[67]<u>Id.</u>

[68]Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22.

[69]Plaintiff Helmut Eindorf's Sur-Reply in Opposition to Defendant's Reply to Plaintiff's Response in Opposition to Defendant Extremetix, Inc.'s Motion for Summary Judgment ("Plaintiff's Surreply"), Docket Entry No. 23.

37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting <u>Celotex</u>, 106 S. Ct. at 2553).

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.   <u>Id.</u> (citing <u>Celotex</u>, 106 S. Ct. at 2553-2554).   In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."   <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2110 (2000).   Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."   <u>Little</u>, 37 F.3d at 1075.

When a party chooses not to respond to all or part of a summary judgment motion, the court will not merely enter a "default" summary judgment, but it may accept as undisputed the facts the movant provides in support of its motion.   <u>See Eversley v. MBank Dallas</u>, 843 F.2d 172, 173-74 (5th Cir. 1988) (finding that when the plaintiff failed to oppose the defendant's motion for summary judgment, the district court "did not err in granting the motion" because the motion established a prima facie showing of the defendant's entitlement to judgment); S.D. Tex. R. 7.4 (2000)

16

("Failure to respond [to a motion] will be taken as a representation of no opposition.").

## III. Analysis

### A. Eindorf's FMLA Claim

#### 1. Applicable Law

The Family Medical Leave Act entitles an "eligible employee" to twelve workweeks of leave during any twelve-month period if the employee encounters one of the family- or health-related situations listed in the statute. 29 U.S.C. § 2612(a)(1) (2006). Under the FMLA, however, an "eligible employee" does not include "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." Id. § 2611(2)(B)(ii). "[T]he threshold number of employees for application of the FMLA is an element of a plaintiff's claim for relief." Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352, 357 (5th Cir. 2006) (applying the rule set out in Arbaugh v. Y & H Corp., 546 U.S. 500, 126 S. Ct. 1235 (2006)).

#### 2. FMLA Analysis

Eindorf alleges in his complaint that "[a]t all relevant times, Eindorf was employed by Defendant, Extremetix, and was . . . an eligible employee within the meaning of [the FMLA]."[70]

---

[70]Complaint, Docket Entry No. 3, ¶ 7.

Extremetix argues it is entitled to judgment as a matter of law because the uncontested evidence in the record shows that the number of Extremetix employees, at the time of Eindorf's employment, falls below the number required for plaintiffs seeking relief under the FMLA.[71]   Keith Rudy, who serves as Chief Financial Officer for Extremetix and oversees Human Resources, stated in his affidavit:

> During Mr. Eindorf's tenure with Extremetix, the company never employed more than 40 persons at its worksite in Houston and it never employed more than 40 persons within 75 miles of the Houston facility.[72]

When asked about Extremetix's employees during his deposition, Rudy testified that in July and August of 2007 there were not fifty employees on Extremetix's payroll and that since he has been CFO there have never been fifty employees, "or anywhere near that," who have been associated with the Houston office.[73]   Eindorf's response neither disputes this evidence nor contests Extremetix's argument, and the record does not contain any evidence, other than Eindorf's allegations, that Extremetix ever had fifty or more employees on its payroll.[74]

--------

[71]Defendant's Motion, Docket Entry No. 17, p. 16.

[72]Affidavit of Keith Rudy, Exhibit 22 to Defendant's Motion, Docket Entry No. 17, ¶ 8.

[73]Deposition of Keith Rudy, Exhibit 1 to Plaintiff's Surreply, Docket Entry No. 23, pp. 110:20-111:24.

[74]Eindorf stated in his deposition that he believes Extremetix had over fifty employees, but Eindorf prefaced this statement with an acknowledgment that he was "the wrong person to ask" and that

3.   Conclusion

Based on the summary-judgment evidence, the court concludes that Extremetix is entitled to judgment as a matter of law as to Eindorf's FMLA claim because Eindorf has not presented a genuine issue of material fact that could persuade a reasonable jury that Extremetix employed fifty or more workers at the time Eindorf sought medical leave.

**B.   Eindorf's ADEA Claim**

1.   Applicable Law

The Age Discrimination in Employment Act provides, in relevant part, that it is unlawful for an employer "to discharge any individual . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C. § 623(a)(1) (2006).[75]  The Supreme Court, in considering whether the burden of persuasion ever shifts to the defendant under the ADEA, recently analyzed the statute's use of the phrase "because of." Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2348, 2350 (2009).

---

the appropriate way to determine the precise number would be to "ask Mr. Rudy," head of Human Resources.  Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, p. 101:4-20.  Upon further questioning Eindorf could provide no factual support for his belief that Extremetix had more than 50 employees.  Id. at pp. 101:18-103:10.

[75]It is not unlawful, however, for an employer to discharge an individual "for good cause."  29 U.S.C. § 623(f)(3).

The Court reasoned that since in this context, "because of" means that "age was the 'reason' that the employer decided to act," a plaintiff seeking to establish a discrimination claim under the ADEA must prove "that age was the 'but-for' cause of the employer's adverse decision." <u>Id.</u> at 2350. Furthermore, the plaintiff, the Court held, retains the burden of persuasion to establish this but-for causation "by a preponderance of the evidence (which may be direct or circumstantial)." <u>Id.</u> at 2351. The <u>Gross</u> decision rejected the framework previously used by the Fifth Circuit to analyze ADEA claims in which the plaintiff relies on direct evidence. <u>Compare</u> <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345, 350 (5th Cir. 2005) ("Plaintiffs presenting direct evidence of age discrimination may proceed under the 'mixed-motive' analysis set forth in <u>Price Waterhouse</u>."), <u>with</u> <u>Gross</u>, 129 S. Ct. at 2351 ("[W]e reject petitioner's contention that our interpretation of the ADEA is controlled by <u>Price Waterhouse</u>."). But here, Eindorf's claim "is admittedly not [based on] direct evidence," but circumstantial evidence.[76] Before <u>Gross</u>, the Fifth Circuit analyzed claims based on circumstantial evidence using the <u>McDonnell Douglas</u> framework. <u>See, e.g.</u>, <u>Berquist v. Washington Mut. Bank</u>, 500 F.3d 344, 349 (5th Cir. 2007). The <u>Gross</u> Court stated that it "has not definitively decided whether the evidentiary framework of <u>McDonnell Douglas</u> . . . is appropriate in the ADEA context," <u>Gross</u>,

---

[76]Plaintiff's Response, Docket Entry No. 20, p. 13.

129 S. Ct. at 2349 n.2.  The Fifth Circuit has therefore continued
to use this framework post-Gross when deciding ADEA claims based on
circumstantial evidence.   See, e.g., Jackson v. Cal-Western
Packaging Corp., 602 F.3d 374, 378-80 (5th Cir. 2010).

While the burden of persuasion to prove but-for causation of
age discrimination lies at all times with the plaintiff, the court
shall apply the McDonnell Douglas framework to "allocat[e] the
burden of production and the order of presenting proof."  Id. at
378.    Under   this   framework,   "[a]   plaintiff   relying   on
circumstantial evidence must put forth a prima facie case, at which
point the burden shifts to the employer to provide a legitimate,
non-discriminatory reason for the employment decision."  Moss v.
BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010).  "If the
employer articulates a legitimate, non-discriminatory reason for
the employment decision, the plaintiff must then be afforded an
opportunity to rebut the employer's purported explanation, to show
that the reason given is merely pretextual."  Id.

2.   Whether Eindorf Has Established a Prima Facie Case

To establish a prima facie case of age discrimination, "a
plaintiff must show that (1) he was discharged; (2) he was
qualified for the position; (3) he was within the protected class
at the time of discharge; and (4) he was either (i) replaced by
someone outside the protected class, (ii) replaced by someone

younger, or (iii) otherwise discharged because of his age."
Jackson, 602 F.3d at 378.

The parties do not dispute that Eindorf was discharged or that
at the time of discharge Eindorf was forty or older and therefore
within the "protected class."   See 29 U.S.C. § 631(a) (2006).
Extremetix argues that (1) Eindorf has failed to meet the second
prong because the evidence shows he was not qualified for his
position, and (2) Eindorf has failed to meet the fourth prong
because the evidence shows he was "not replaced by someone younger"
and "was not treated less favorably than similarly situated younger
employees."[77]

(a)  "Qualified for the Position"

Extremetix asserts that Eindorf's numerous documented mistakes
as an employee demonstrate he was not qualified for his position.[78]
Eindorf responds that the fact that Extremetix hired him shows he
was qualified and that nothing occurred during his employment
rendering him unfit for the position.[79]

The Fifth Circuit has stated that "a plaintiff challenging his
termination . . . can ordinarily establish a prima facie case of
age discrimination by showing that he continued to possess the
necessary qualifications for his job at the time of the adverse

---

[77]Defendant's Motion, Docket Entry No. 17, p. 11-12.

[78]Id. at 11.

[79]Plaintiff's Response, Docket Entry No. 20, p. 7.

action." <u>Bienkowski v. American Airlines, Inc.</u>, 851 F.2d 1503, 1506 (5th Cir. 1988).  In <u>Bienkowski</u>, the employer contended that the plaintiff was not "qualified" for his job as a security representative because his supervisors became unsatisfied with his work.  <u>Id.</u> at 1505.  The <u>Bienkowski</u> court concluded that "[p]lacing a plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy."  <u>Id.</u>  Here, Extremetix is similarly contending that Eindorf is not "qualified" because he failed to meet his supervisors' expectations.  But there is nothing in the record suggesting that Eindorf did not possess the same qualifications on the day he was discharged as on the day he was hired.  That is, there is no evidence that some occurrence, such as "suffer[ing] a physical disability or los[ing] a necessary professional license," prevented Eindorf from working with the same experience and skill set he possessed at the time he began working for Extremetix.  <u>See Bienkowski</u>, 851 F.2d at 1506 n.3.  The court therefore concludes that a reasonable jury could determine that Eindorf has shown he is a "qualified" employee.

> (b)  "Replaced" or "Otherwise Discharged"

To establish his prima facie claim, Eindorf must present evidence that would lead a reasonable jury to conclude that he was either (i) replaced by someone outside the protected class (*i.e.*, someone younger than 40), (ii) replaced by someone younger (*but who*

23

falls within the protected class), or (iii) otherwise discharged
because of his age.  See Jackson, 602 F.3d at 378.  Extremetix
first argues that Eindorf cannot meet either of the first two
options because he "was not replaced by someone younger."[80]  The
prima facie requirements do not restrict an ADEA plaintiff's
recovery only to a situation in which a new, younger employee was
hired after the plaintiff was discharged to take on the plaintiff's
former responsibilities; a younger employee hired pre-discharge who
absorbs the plaintiff's responsibilities post-discharge may be
sufficient.  See Williams v. General Motors Corp., 656 F.2d 120,
128 (5th Cir. 1981) ("[T]he district court correctly
perceive(d) . . . the notion of a prima facie case in a
discrimination action as a fluid one.") (internal quotations
omitted).

A genuine issue of fact exists as to whether Extremetix hired
a younger employee to "replace" Eindorf.  Extremetix hired Michelle
Storm as a "network administrator" in February of 2007, six months
before Eindorf's termination.[81]  Eindorf states that when she was
hired he was stripped of his equipment-configuration
responsibilities and felt that he was "shoved aside."[82]  In

---

[80]Defendant's Motion, Docket Entry No. 17, p. 12.

[81]Letter to Michelle Storm, Exhibit 23 to Plaintiff's Response,
Docket Entry No. 20, p. 1.

[82]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's
Response, Docket Entry No. 20, pp. 69:23–70:13.

addition, Storm and Eindorf "shared" the responsibilities previously assigned solely to Eindorf.[83]   Storm was thirty-five years old when she was hired.[84]   Furthermore, six months after Eindorf's termination, Extremetix hired a new twenty-one-year-old employee to be an "IT specialist," the job previously held by Eindorf.[85]

Accordingly, since a reasonable jury could find that Eindorf was replaced by younger employees, the court concludes that Eindorf has established the necessary elements for a prima facie case of age discrimination under the ADEA.

### 3. Whether Eindorf Has Provided a Legitimate, Non-Discriminatory Reason

Based on the summary-judgment evidence, the court concludes that Extremetix's stated reason for terminating Eindorf—"poor work performance"—is a legitimate, non-discriminatory reason for discharging an employee.

### 4. Whether Extremetix's Stated Reason for Terminating Eindorf is Merely Pretext for Discrimination

The only remaining question is whether the summary-judgment evidence could lead a reasonable jury to conclude that Extremetix's stated reason for terminating Eindorf is merely "pretext" for age

---

[83]See id. at 71:10-20.

[84]2007 Payroll, Exhibit 27 to Plaintiff's Response, Docket Entry No. 20, p. 3.

[85]Deposition of Michael Hergert, Exhibit 4 to Plaintiff's Response, Docket Entry No. 20, pp. 71:13-73:1, 174:11-175:4.

discrimination.   "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Jackson, 602 F.3d at 378-79 (internal quotations omitted).

Eindorf argues that there is a fact issue as to whether Extremetix's proffered reason is pretext because (1) Hergert and Rudy's decision to begin their severance letter to Eindorf with the phrase, "it is time you retired," is evidence of discriminatory animus;[86] (2) Extremetix's evidence supporting its reason is subjective and produced by "interested parties," and is therefore unpersuasive; and (3) the summary-judgment evidence shows Extremetix did not view his work performance as "poor" during his employment.[87]   Extremetix argues that (1) telling Eindorf it was time he "retired" was an attempt to offer Eindorf a way to leave the company without being fired for cause and was not a discriminatory comment; (2) Eindorf admits to making "many errors," and the fact that Eindorf contests other errors is not evidence that his poor work performance is merely a pretext; and (3) during Eindorf's tenure with Extremetix, the company discharged thirteen employees other than Eindorf, all of whom were younger than Eindorf

---

[86]Plaintiff's Response, Docket Entry No. 20, p. 9.

[87]Plaintiff's Response, Docket Entry No. 20, pp. 9-13, 15-17, 20-21.

and all of whom were discharged for the same or for a similar
reason Extremetix discharged Eindorf.[88]

Since Eindorf does not attempt to establish disparate
treatment, the court's analysis focuses on whether a reasonable
jury could conclude, after reviewing the summary-judgment evidence,
that Extremetix's explanation of poor work performance is "false"
or "unworthy of credence."  The court concludes that the record is
amply filled with evidence supporting Extremetix's proffered reason
for termination.  Extremetix's documentation of Eindorf's errors
began just weeks after Eindorf's employment began and was regularly
updated throughout Eindorf's employment.

In 2005 Eindorf received a verbal warning for "shipping
incorrect equipment to clients" and "shipping equipment late";[89] he
received a written warning for incorrectly configuring equipment;[90]
he was placed on probation for forty-five days for "configuring
equipment improperly, shipping equipment late, sending an
incomplete shipment[,] and sending a shipment to the wrong
client";[91] and he was assigned to a different supervisor, one whose

---

[88]Defendant's Motion, Docket Entry No. 17, pp. 13-16.

[89]Affidavit of Tony DiCamillo, Exhibit 2 to Defendant's Motion,
Docket Entry No. 17, ¶ 4.

[90]Written Warning, Exhibit 6 to Defendant's Motion, Docket
Entry No. 17, p. 1.

[91]Written Probation Notice, Exhibit 7 to Defendant's Motion,
Docket Entry No. 17, p. 1; Affidavit of Tony DiCamillo, Exhibit 2
to Defendant's Motion, Docket Entry No. 17, ¶ 6.

office was closer to Eindorf's work area,[92] so the supervisor could "provide closer supervision and immediate guidance."[93]   In 2006, Eindorf received a verbal warning for neglecting to configure equipment that was sent to a client;[94] he received a written warning for neglecting to include power-supply equipment with a shipment;[95] and he received a verbal warning for failing "to keep [the] inventory list consistent with [the] actual inventory" and for failing to keep the list neat and free of typos.[96]   And during the first eight months of 2007, Eindorf received a verbal warning for "[e]rrors in shipping, missing items, wrong addresses and typos, [and] forgotten shipment[s]";[97] he was relieved from his equipment-configuration and inventory-catalog duties because of continuous

---

[92]Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 3.

[93]Affidavit of Charly Garrett, Exhibit 1 to Defendant's Motion, Docket Entry No. 17, ¶ 5.

[94]Record of Verbal Warning, Exhibit 13 to Plaintiff's Response, Docket Entry No. 20, p. 1.

[95]Written Warning of 9/20/06, Exhibit 14 to Plaintiff's Response, Docket Entry No. 20, p. 1.   See also E-mails between Hergert, DiCamillo, & Eindorf, Exhibit 11 to Defendant's Motion, Docket Entry No. 17, p. 1.

[96]Verbal Warning of 10/23/06, Exhibit 16 to Plaintiff's Response, Docket Entry No. 20, p. 1.

[97]Verbal Warning of 3/26/07, Exhibit 18 to Defendant's Motion, Docket Entry No. 17, p. 1; Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 9.

mistakes;[98] he neglected to include power-supply equipment with a shipment;[99] he "erroneously placed a return address label on a shipment intended to go to the Norwalk Jazz Festival";[100] and he swapped shipping labels so that two clients received a shipment intended for the other client.[101]

Moreover, even though Eindorf asserts that this documentation amounts to "wholly subjective knit picking," Eindorf accepts responsibility for many of the alleged mistakes.  For example, on his warning from June of 2005, Eindorf wrote "no" next to only three out of the seven alleged errors.[102]  He likewise did not contest that he was responsible for several of the errors leading up to his probation.[103]  After receiving another warning, Eindorf

---

[98]Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 9.

[99]Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 10.  See also E-mails Between DiCamillo and Client, Exhibit 19 to Defendant's Motion, Docket Entry No. 17, pp. 1-2.

[100]Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 10.

[101]Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 11.  See also E-mail Between DiCamillo and Hergert, Exhibit 21 to Defendant's Motion, Docket Entry No. 17, p. 1.

[102]Id.; Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, pp. 25:2-28:24.

[103]See Eindorf's Notes on Written Probation Notice, Exhibit 12 to Plaintiff's Response, Docket Entry No. 20, p. 2; Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, pp. 38:2-41:11.

wrote that he would "attempt for it not to happen again."[104]   Even when Eindorf stated in his deposition that he could not recall a verbal warning from 2007, he remembered having conversations with Hergert about shipments with missing items and wrong shipping labels[105] and recalled putting a return label on a package instead of the appropriate shipping label.[106]   Eindorf argues many of the mistakes he made were because Extremetix provided no training or procedures for his responsibilities, but Extremetix's alleged lack of guidance has little relevance to whether its reason for discharge is pretextual.   Each written warning put Eindorf on notice that recurring mistakes could result in his termination.[107] The evidence before the court provides substantial support for Extremetix's reason for discharging Eindorf and would not persuade a reasonable jury that "poor work performance" is merely a pretext for age discrimination.

Eindorf's argument that there is a material fact question as to the pretext issue rests almost entirely on Extremetix's use of the word "retire" in its August of 2007 severance letter to

---

[104]Written Warning of 9/20/06, Exhibit 14 to Plaintiff's Response, Docket Entry No. 20, p. 1.

[105]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, pp. 68:5-69:22.

[106]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, pp. 75:16-76:12.

[107]See, e.g., Written Warning, Exhibit 6 to Defendant's Motion, Docket Entry No. 17, p. 1.

Eindorf.[108]   Garrett, DiCamillo, Hergert, and Rudy state that in
saying "[w]e have determined that it is time you retired from
Extremetix," they were giving Eindorf the option to leave the
company without a formal termination for cause.[109]  Eindorf responds
that the meager severance package Extremetix offered—two-months pay
in exchange for a release of liability—shows that Hergert's comment
that it was time for Eindorf to retire was based on an "age based
animus."[110]

The record shows that in early August of 2007, Extremetix
decided that Eindorf's numerous documented mistakes had become too
burdensome and that it needed to sever the employment relationship.
The evidence is insufficient for a reasonable juror to conclude
that the decision to sever the employment relationship was tied to
anything other than Eindorf's history of poor work performance.
The fact that Extremetix used the word "retire" is not enough,
given the summary-judgment evidence, to create an inference of age-
based *discrimination*.  See Martin v. Bayland Inc., 181 Fed. Appx.
422, 424-26 (5th Cir. May 12, 2006) (unreported) (affirming the
district court's grant of summary judgment and finding that the

_____

[108]See Letter to Eindorf of 8/6/07, Exhibit 2 to Plaintiff's
Response, Docket Entry No. 20, p. 1.  Eindorf received a
"Retirement Agreement and General Release" along with the letter.
Id. at 2-5.

[109]See, e.g., Affidavit of Charly Garrett, Exhibit 1 to
Defendant's Motion, Docket Entry No. 17, ¶ 9.

[110]Plaintiff's Response, Docket Entry No. 20, p. 8.

phrase "it's time to retire" failed to rebut the employer's proffered reason for termination). Furthermore, Rudy stated in his affidavit that during Eindorf's tenure of employment, Extremetix fired thirteen employees, all of whom were younger than Eindorf and all of whom were discharged for the same or for a similar reason.[111] Broadly, a reasonable jury could not conclude that by a preponderance of the evidence, age was the "but-for" cause of Extremetix's decision to terminate, see Gross, 129 S. Ct. 2343 at 2351, and more narrowly, a reasonable jury could not conclude that Extremetix's stated reason for termination—poor work performance—is merely pretext for age discrimination.

Eindorf argues that the summary-judgment evidence produced by Extremetix should not be afforded serious consideration because much of it is "undocumented, newly created testimony in the way of affidavits from interested parties."[112] First, "[s]worn affidavits are certainly appropriate for review on a Rule 56 motion for summary judgment." Jackson, 602 F.3d at 377. Second, the summary-judgment evidence of Eindorf's poor work performance is present not only in affidavits, but in documented verbal warnings, documented written warnings, a documented notice of probation, and depositions, including Eindorf's deposition in which he takes

---

[111]Affidavit of Keith Rudy, Exhibit 22 to Defendant's Motion, Docket Entry No. 22, ¶ 7.

[112]Plaintiff's Response, Docket Entry No. 20, p. 14.

responsibility for several errors he committed during his employment.[113]

The evidence Eindorf refers to when he argues that his work performance could not have been the reason for his termination is equally unavailing. Eindorf first points to the fact that Extremetix gave him a raise in 2006 from his salary of $36,000 to $45,000.[114] But Eindorf testified that he requested and was granted the raise "because of the extended working hours and the driving time and the gas prices going through the roof."[115] Eindorf does not contest Hergert's statement that the raise was unrelated to the quality of Eindorf's work.[116] Eindorf also points to the fact he was given stock options in early 2007.[117] But although the stock-option agreement has the word "performance" in its title, Rudy, Extremetix's CFO, testified that the "only criteria applied was that they were full-time employees with the company" and that

---

[113]See, e.g., Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, pp. 38:2-41:11, 68:5-69:22, 75:16-76:12; Eindorf's Notes on Written Probation Notice, Exhibit 12 to Plaintiff's Response, Docket Entry No. 20, p. 2.

[114]Plaintiff's Response, Docket Entry No. 20, p. 16.

[115]Deposition of Helmut Eindorf, Exhibit 3 to Plaintiff's Response, Docket Entry No. 20, p. 44:6-9.

[116]See Affidavit of Michael Hergert, Exhibit 3 to Defendant's Motion, Docket Entry No. 17, ¶ 4.

[117]Plaintiff's Response, Docket Entry No. 20, p. 21.

performance was not a consideration.[118]  The only other evidentiary
response to Extremetix's proffered reason for termination is the
fact that Hergert and Rudy offered Eindorf a retirement package.
This evidence alone does not raise a genuine issue of material fact
as to whether Extremetix's proffered reason is pretextual.

## C.    Conclusion

Because the summary-judgment evidence shows that at the time
Eindorf sought medical leave, Extremetix did not have fifty or more
employees, the court concludes that a reasonable jury could not
find that Eindorf is able to satisfy all the elements set out under
the FMLA.    The court will therefore grant Extremetix's summary-
judgment motion with respect to Eindorf's FMLA claim.

Because the summary-judgment evidence substantially supports
Extemetix's proffered legitimate and non-discriminatory reason for
discharging Eindorf and does not show that there was discriminatory
animus displayed towards Eindorf, the court concludes that a
reasonable jury could not find that Extremetix's stated reason is
pretext for age-based discrimination.    The court will therefore

---

[118]Deposition of Keith Rudy, Exhibit 1 to Plaintiff's Surreply,
Docket Entry No. 23, pp. 112:18-113:3.    The court does not find
Rudy's statement from earlier in his deposition (when he agreed
that "[n]ot every employee receives [stock options] every year") to
be inconsistent with his statement that the options were given to
all full-time employees.  Id. at 85:3-9.

34

grant Extremetix's summary-judgment motion with respect to
Eindorf's ADEA claim.

## IV. Order

For the reasons explained above, the court concludes that
Extremetix has established that it is entitled to judgment as a
matter of law as to Eindorf's FMLA and ADEA claims. Accordingly,
Defendant's Motion for Summary Judgment (Docket Entry No. 17) is
**GRANTED**. Defendant's Motion to Strike Plaintiff's Unauthorized
Sur-Reply (Docket Entry No. 24) is **DENIED** as moot.

**SIGNED** at Houston, Texas, on this 12th day of November, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE